In the Matter of the Judicial Settlement of the Accounts of CATHARINE BLAUVELT et al., as Executrices, etc.

The will of B. gave to his widow the use of all his estate during widowhood, and authorized her to sell any of the real estate as to her should seem just. She and the testator's two daughters were made executrices. She and one of the daughters qualified. The widow sold several pieces of real estate, and for loss in reinvesting the proceeds, which were received by her, she and the other executrix were charged on settlement of their accounts as executrices. *Held*, error; that while the widow took but a life estate and the proceeds of the sales were to be used by her as life tenant only, the sales were made by her, not as executrix, but as donee of the power of sale; that she was entitled to sell without notice to her co-executrix, and to receive the proceeds, and her co-executrix was not guilty of negligence in permitting her to so receive them.

Also *held*, that the widow could not be held liable for the losses, in the proceeding for an accounting.

*It seems*, the remaindermen would have had the right, before the purchase-money was paid over, to ask a court of equity to make some condition in the way of securing the safety of the fund before the life tenant should be permitted to enjoy its possession if there were doubts as to her solvency.

*It seems* also the remaindermen may take proceedings to compel security to be given by the life tenant for the safety of the fund and its forthcoming at the proper time.

*In re Blauvelt* (60 Hun, 394), reversed.

(Argued January 26, 1892; decided March 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order

made July 2, 1891, which affirmed a judgment entered upon a decree of the surrogate of Rockland county.

In a proceeding for the settlement of the account of the executrices of Isaac I. Blauvelt, deceased, the following facts appeared:

Isaac I. Blauvelt died in 1861, leaving him surviving a widow and two daughters, all of whom were made executrices of his will. One of the daughters renounced the office of executrix and never acted as such. There were no debts. The will gave to the testator's widow, during her widowhood, the use of all his estate, "authorizing her to sell and dispose of any of my real estate as to her shall seem just." After her death the property was to be divided into equal portions, one of which was given to each of the testator's daughters for life, and upon her death to be equally divided among her heirs as they shall attain the age of twenty-one years. The widow sold certain pieces of real property, and for losses in the investment of the proceeds, she and her co-executrix were charged.

*Thaddeus D. Kenneson* for appellants. The Surrogate's Court had no jurisdiction to require both or either of the executrices to account for the proceeds of real estate which was owned by the testator at his death and which has since been sold by his widow Catharine Blauvelt, under the power of disposal given to her in the will. (*Shumway* v. *Cooper,* 16 Barb. 556, 559; *In re Blow,* 32 N. Y. S. R. 290, 294; *In re Woodworth,* 5 Dem. 156; *Dunning* v. *O. N. Bank,* 61 N. Y. 497; 1 R. S. 732, §§ 74, 75, 79, 81, 85, 94; *Terry* v. *Wiggins,* 47 N. Y. 512; *Trustees, etc.,* v. *Kellogg,* 16 id. 83; *Jennings* v. *Conboy,* 73 id. 230; *Roseboom* v. *Roseboom,* 81 id. 356; *In re Calyer,* 4 Redf. 305; *In re Brown,* 5 Dem. 223.) The question of jurisdiction may be raised in this court. (*Bevan* v. *Cooper,* 72 N. Y. 317.)

*Abram A. Demarest* for respondents. The power of sale given to the widow by the will of testator did not confer upon her power to dispose of the entire fee for her own benefit, but only for the benefit of herself and those coming after

her, named in the will, viz., the daughters and grandchildren of testator. (*Terry* v. *Wiggins*, 47 N. Y. 512–516; *M. L. Ins. Co.* v. *Shipman*, 108 id. 19; *Sweeney* v. *Warren*, 127 id. 433; *Jennings* v. *Conboy*, 73 id. 230.) Where the several clauses of a will are conflicting, they must be construed together, and such construction given to it as will give effect to every expression the will contains, and such as will harmonize with the different provisions without violating the plain and obvious intentions of the testator. (*In re Fernbacher*, 17 Abb. [N. C.] 339; *Wager* v. *Wager*, 96 N.Y. 174; *Taggart* v. *Murray*, 53 id. 233; *Christie* v. *Phyfe*, 19 id. 344; *Sarter* v. *Hunt*, 40 Barb. 89; *Lovett* v. *Kingsland*, 44 id. 560; *Kirmier* v. *Rogers*, 42 N. Y. 531; *Monarque* v. *Monarque*, 80 id. 320.) The executrices should be held personally liable for the losses to the estate. (*In re Court*, 5 Dem. 269; *In re Kettle*, 1 N. Y. 468; *Savage* v. *Gould*, 60 How. Pr. 217; *Bogert* v. *Van Velsen*, 4 Edw. Ch. 719.)

PECKHAM, J. We have no doubt that the widow took but a life estate in the property of her husband under his will. The permission and authority given to her in such will to sell and dispose of the real estate of the testator, "as to her shall seem just," when taken in connection with other provisions of the will, plainly restrict her power in the proceeds arising from the sale of such real estate to that of a life tenant only. The proceeds take the place of the realty, and are held by the same tenure. The will disposed of the entire estate of the testator after the death of the widow.

The surrogate and the General Term have held the executrices (one of whom was the widow and the other was the daughter of the testator) liable for losses sustained by investments made by the widow of moneys which were the proceeds of the sale of a portion of the real estate by the widow under the power of sale given to her by the will.

The surrogate found that the widow had sold a portion of such real estate, and had herself received the proceeds of such sales, amounting to about $24,000.

A portion of this sum was so invested by her as to be lost, and the surrogate has held that it was lost under such circumstances as to hold both executrices liable as for a negligent and improper disposition of the funds of the estate.

In any event, so far as the daughter, executrix, is concerned, we think this decree is erroneous. The daughter never received the proceeds from the sale of the real estate. Such estate was sold by the mother, not as executrix, but as the donee of a power of sale contained in the will. The proceeds were received by the mother and not by the daughter. The mother was entitled to receive them as representing the real estate which she had sold, and she had a life estate in them by virtue of such will. As the daughter never received these proceeds, either in fact or in law, and as she was guilty of no negligence in permitting her mother to receive the proceeds of the sale of the real estate which the mother sold by virtue of the power given her by the will, there is no principle upon which the liability of the daughter as executrix can be maintained. (*Croft* v. *Williams*, 88 N. Y. 384; *Paulding* v. *Sharkey*, Id. 432; *Bruen* v. *Gillet*, 115 N. Y. 10.)

In this proceeding, however, which is one for an accounting of executors before the surrogate, we do not think either of the executrices is liable for these losses, and the decree must be reversed as to both for that reason.

The widow was, by the terms of the will, solely entitled during her life to the use of all the property of the testator. When she sold the real estate under the power of sale given to her by the will, she received the proceeds, not as executrix, but as life tenant, and as such entitled to the proceeds as representing the realty. If she had continued to hold the realty, she would have had the right to collect and retain the rents and profits as owner of the life estate, and not as executrix, and she would have been liable to account to no one. Having sold the realty, the proceeds thereof represent and take the place of such realty, and she is entitled to the interest upon them during her life as life tenant and not as executrix. In this view she occupies, as to the proceeds of

the sale of the realty, much the same position as a tenant by the curtesy does in regard to the proceeds of land which has been sold, and in such case it has been held that the moneys represent the land. (*In re Camp*, 126 N. Y. 377.)

It might be that if the real estate were to be sold by the executors, as they should deem just, and if the proceeds of the sale were to come into their hands first and then be paid over to the tenant for life, it would be the duty of such executors, before paying over such funds to the life tenant, to see to it that he gave security, if there were any doubt as to his solvency. If in such case the executor neglected to ask or exact security, it possibly might be that he would be liable for a subsequent loss caused by the insolvency of the life tenant. This is no such case. The life tenant (the widow of the testator) had, by the terms of the will, the right, *as to her seemed just*, to sell this real estate and to give deeds therefor "in the same manner as I could have done, if living." She thus had a power to sell without even notifying the executors, and she must, therefore, have had the power to receive the proceeds of such sale without giving any notice to them. The executors, as such, never had any power over, or right to demand the possession of, such funds, or to compel an accounting in regard to them. I have no doubt that those who were entitled in remainder to the principal arising from the sale of the real estate, would, if aware of the sale, have had the right, before the money was paid over, to ask a court of equity to make some condition in the way of securing the safety of the fund before the tenant for life should be permitted to enjoy its actual possession if there were any doubt as to her solvency. This, however, would rest upon the jurisdiction which such court has in relation to the custody of funds by those who have but a beneficial interest therein and not an absolute title, and where such title devolves upon persons in remainder. (*In re Camp, supra*, pg. 385.)

What power such court now has under the facts herein is not the question before us. The executors, as such, it seems clear, have no interest in the matter. There is but one con-

tingency in which they would have anything to do with the real estate or its proceeds. That contingency would arise in case it were found necessary to sell the realty in order to pay the debts of the testator. In such case they would, under the provisions of the statute, apply for leave to sell the real estate in order to pay such debts. There were no debts and hence they had no power to apply to sell or to sell the realty. As executrices, it was in no way their duty to discover whether the widow had sold the real estate under the power of sale confided to her, or whether she had received the proceeds thereof without giving security.

The remaindermen have the right to take such proceedings as they may be advised in relation to compelling security to be given by the life tenant for the safety of the proceeds of the sale of the realty in the hands of such life tenant, and for its forthcoming at the proper time. What those proceedings should be and what powers a court of equity has under the circumstances developed here, are questions not now before us and upon which it would be inappropriate for us to express in advance any opinion.

For the reason that the executrices are not responsible as such in this proceeding before the surrogate, in regard to the proceeds arising from the sale of the real estate by the widow, the order of the General Term affirming the decree of the surrogate as to those funds is erroneous, and such order and decree should both be reversed and the record remitted to the surrogate for further proceedings in conformity with this opinion, with costs to the appellants against the respondents in the Supreme Court and in this court.

All concur.

Judgment accordingly.