(59 App. Div. 242.)

### In re RUSSELL et al.

(Supreme Court, Appellate Division, Second Department.  March 22, 1901.)

WILLS—EQUITABLE CONVERSION—CONSTRUCTIONS.

> A will provided that the net proceeds of testator's real estate should be divided between his wife and children, and, if any of his children had died, leaving lawful issue, that the share of the deceased should go to such issue. His executors were authorized to sell his realty for the purpose of such distribution, and to reinvest the fund till such distribution, and pay the interest thereon to the devisees. *Held*, that there was an equitable conversion of the realty into personalty at the death of the testator, and hence the husband of a daughter subsequently dying without issue was entitled to share therein, though the executors had not executed the power of sale at the time of her death.

Appeal from surrogate's court, Westchester county.

Settlement of the account of Euphemia D. Russell and another, as executors of the last will and testament of James Russell, deceased. From a decree settling such account, the executors and others appeal. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

John F. Dillon, for appellants.

Samuel Phillips Savage, for respondent.

HIRSCHBERG, J.  The question presented on this appeal is whether in the case of a devise in terms not of real estate, but of the proceeds of its sale, the subject of the gift on the death of the devisee after the testator, but before the execution of a naked power of sale, conferred upon the executors, is to be regarded for the purposes of devolution as real or as personal estate. The will of the testator, James Russell, contains the following clauses:

"Sixth. All the rest, residue, and remainder of my personal estate, and the net proceeds of the sales of the rest, residue, and remainder of my real estate, owned by me individually or with my co-partner, Edward Tracy, or others, I give, devise, and bequeath to my wife and my children, to be divided equally between them, share and share alike; that is to say, to my wife one share, to each children equal share with my wife. Should any of my children have died, leaving lawful issue, such deceased child's share to be given to such issue.

"Seventh. For the purpose of such distribution of my estate among my wife and children, I fully authorize and empower my executors and executrix hereinafter named, or such of them as shall qualify, and the survivors or survivor of them, to sell and dispose of any and all my real estate and interest in real estate at public or private sale at such time or times within a lawful period and on such terms as they shall deem most advantageous to my estate, and to execute and deliver to the purchaser or purchasers thereof good and sufficient deeds of conveyance thereof, and to do each and every act and thing lawful and necessary for them to carry out and complete said sales. I also authorize my executrix and executors hereinafter named to invest and reinvest the moneys of my estate until its distribution, such investment to be on improved real estate in the city of New York, or bonds of the United States government, or New York state or city bonds. The net income of my estate until its distribution I direct to be divided equally between my wife and children, share and share alike."

At the time of the execution of the will the testator had five children, who, with his wife, survived him. He had no other children.

He died a resident of this state in January, 1888. His daughter Elizabeth D. married James K. Black on the 28th day of January, 1891, at the city of New York, and died without having had children, intestate, and under age, at Belfast, Ireland, on the 9th day of December, 1892, leaving her husband surviving. The proceedings herein were commenced on petition of her husband, as ancillary administrator of her estate, and resulted in the filing of an account by the executors in which he was denied any right or claim in or to the estate; but the surrogate decided that he was entitled to receive one-sixth of the residue of the testator's personal estate and of the net proceeds of the sale of his real estate. The testator left a very large amount of real estate in this and other states, a part of it in his own name, and considerable of it in joint ownership with his partner. The executors sold some of the real estate before and some after the death of Mrs. Black. It seems quite beyond question that there was an equitable conversion of the real estate "out and out." It is immaterial to inquire whether the beneficiaries could have restored the property to its original character by any united action, inasmuch as they never attempted to do so, and Mrs. Black died before she was legally competent to join in such an effort. The question of conversion, of course, is to be determined from the intention of the testator as shown by the provisions of the will, and such intention may be found, according to the authorities, either (1) in a positive direction for a conversion; or (2) an absolute necessity to sell in order to carry out the provisions of the will; or (3) such a blending of the real and personal estate by the testator in the will as clearly to show an intention to create a fund out of both real and personal estate, and to bequeath the fund as money. In this case just such a blending has been directed, and the proceeds of the sale of the real estate, with the corpus of the personal estate, are bequeathed in express terms; and no discretion is vested in the executors excepting as to the selection of the time and the fixing of the terms of sale. It is true that the direction to sell is not imperative, but a sale is necessary in order to carry out the scheme of distribution; and it is settled that, whether the sale is directed or merely authorized, the doctrine of equitable conversion equally applies. Dodge v. Pond, 23 N. Y. 69; Ross v. Roberts, 2 Hun, 90, affirmed in 63 N. Y. 652; Power v. Cassidy, 79 N. Y. 602, 613; In re Hosford, 27 App. Div. 427, 50 N. Y. Supp. 550.

In Moncrief v. Ross, 50 N. Y. 431, 436, the court said:

"By the power the land was equitably converted into money from the time the sale was directed to be made, and will be so regarded thereafter in equity for all purposes. Bogert v. Hertell, 4 Hill, 492; 1 Jarm. Wills, 525, 530. This is upon the principle that equity regards as done what ought to be done. Manice v. Manice, 43 N. Y. 303; White v. Howard, 46 N. Y. 144. It follows that the land must be regarded as converted into money for the purpose of determining who is entitled to the proceeds, whether arising from income or a sale. So regarded, by the eighth and ninth clauses of the will the entire proceeds of the land, except the funeral expenses, etc., are given as money to the sisters of the testator, Jane and Agnes. Any income derived from the real estate before the sale has been made in equity clearly belongs to these sisters, and not to the plaintiff."

In Fisher v. Banta, 66 N. Y. 468, the will directed a division of the real estate between the testator's two sons. In a codicil the executor was directed to sell the real estate, having no discretion "except as to the time and manner of sale." Page 476. The sons survived the testator, but one of them died before the execution of the power. The court said (page 477):

"From the moment of the testator's death, the conversion took place, and the land became money for all purposes of administration. The impression of money was fixed upon it. The sons took their interest in the converted property as legatees, and upon their death before actual sale it would pass to their personal representatives. Fletcher v. Ashburner, 1 Brown, Ch. 497; Craig v. Leslie, 3 Wheat. 587, 4 L. Ed. 460; Bogert v. Hertell, 4 Hill, 492; and cases cited; Stagg v. Jackson, 1 Comst. 206. The power of sale was not affected by the death of Charles Edward Banta before the lands of Albert Banta were sold by his executor. The necessity of a sale for the purpose of a division between the surviving brother and the personal representatives of Charles Edward continued. Nor was conversion prevented from taking place, because the legal estate was not given in trust to the person in whom the power of sale was vested, or because then there was no devise of the lands, and that they passed by descent to the two sons of the testator. 1 Jarm. Wills, 465; Post v. Hover, 33 N. Y. 593; Bogert v. Hertell, supra."

In Morse v. Morse, 85 N. Y. 53, there was authority to sell expressed in the words, "I will, authorize, and empower," etc., with power to lease meanwhile. Judge Andrews said (page 59):

"It is clear that the power of sale in the will in question was conferred for the purpose of conversion, and with a view to the distribution of the proceeds of the sale of the land among the testator's children. This is not expressly declared, but the prior gift of the whole residuary estate to them, followed by the power of sale to the executors, permits of no other inference. Fisher v. Banta, 66 N. Y. 468; Marsh v. Wheeler, 2 Edw. Ch. 156; Kinnier v. Rogers, 42 N. Y. 531. The direction to sell was imperative, and operated in equity as a conversion of the land into money. It was the intention of the testator that the beneficiaries should receive their respective interests in money, and not in land."

In Hope v. Brewer, 136 N. Y. 126, 32 N. E. 558, 18 L. R. A. 458, the executors were directed to sell and convert into money all the testator's real estate as soon as might conveniently be done after his death. The court said (page 134, 136 N. Y.; page 560, 32 N. E., and page 462, 18 L. R. A.):

"This provision of the will operates to convert the real estate of which Thomas Hope died seised into personalty, and subjects it to the operation of the rules of law governing the devolution of personal property."

See, also, Lent v. Howard, 89 N. Y. 177; Delafield v. Barlow, 107 N. Y. 535, 14 N. E. 498; Cottman v. Grace, 112 N. Y. 305, 19 N. E. 839, 3 L. R. A. 145; Asche v. Asche, 113 N. Y. 232, 21 N. E. 70; Greenland v. Waddell, 116 N. Y. 234, 22 N. E. 367; Fraser v. Trustees, 124 N. Y. 485, 26 N. E. 1034; Underwood v. Curtis, 127 N. Y. 523, 28 N. E. 585; Bowditch v. Ayrault, 138 N. Y. 227, 34 N. E. 514; McDonald v. O'Hara, 144 N. Y. 568, 39 N. E. 642.

Under this will the wife and children of the testator take the estate, not only in money, upon the conversion of the realty, but their interests are vested and immediate, both in tenure and in the right of enjoyment. There is no contingency, no uncertainty as to the ben-

eficiaries, no dependency upon survivorship, no future event to determine the period of distribution, but, on the contrary, the executors may sell and divide the funds among the wife and children living both at the date of the will and of the testator's death as speedily as may be consistent with the due administration of their trust. The words, "should any of my children have died," etc., in Mr. Russell's will, refer to a death before the testator, and not before distribution. The distinguished counsel for the appellants has labored with characteristic power and assiduity to gather sanction from the authorities for a contrary view from that herein stated, and to maintain that this is one of the cases where division is to be made in the future among a class whose members can only be determined when the time for distribution arrives. The authorities in this state are uniformly opposed to his contentions. They were collated by the writer in Canfield v. Fallon, 26 Misc. Rep. 345, 57 N. Y. Supp. 149, in a case where the only gift was to be found in a direction to divide at a future date, and the opinion that even there, following the intention of the testator, the estate created was to be regarded as vested, was adopted by this court (Canfield v. Fallow, 43 App. Div. 561, 57 N. Y. Supp. 149) and by the court of appeals (Canfield v. Fallon, 161 N. Y. 623, 55 N. E. 1093). But here the case is infinitely stronger. Here the beneficiaries are at all times known,—the wife and children of the testator,—as though mentioned individually by name. There is no postponement of payment until the happening of any contingency in a legal sense, and the property is given to them by direct and precise words of bequest. In Re Baer, 147 N. Y. 348, 41 N. E. 702, to which the learned counsel for the appellants invites "special attention," the distinction here suggested was emphasized by the court (page 354, 147 N. Y., and page 703, 41 N. E.):

"Moreover," wrote Judge O'Brien, "there are not in this devise any words of direct and immediate gift to the children or heirs of the brother, but a direction that the trustees should convey to them at a future time on a certain contingency. They were to take through the medium of a power in trust, and the time of the vesting of the interest was thus deferred, in form, at least, until the time of distribution. It is a case, then, where, as the cases express it, 'futurity is annexed to the substance of the gift,' and warrants the application of the principle that where a future interest is devised, not directly to a given person, but indirectly, through the exercise of a power conferred upon trustees, the devise is designed to be contingent, and survivorship at the time of distribution is an essential condition to the acquisition of an interest in the subject of the gift."

To the like effect is In re Crane, 164 N. Y. 71, 58 N. E. 47, also cited by the appellants' counsel. The division there was postponed by the terms of the will until the death of the testator's widow, and was to be among the survivors of the testator's brothers, sisters, and niece, and the issue of such as were dead; and the courts below held that the postponement was merely for convenience in administration, and not for the purpose of annexing futurity to the subject of the gift, and that the case therefore fell within the exceptions to the rule now under consideration. The court of appeals held otherwise, and on the express ground that the will contained no words of gift Chief Judge Parker said (page 76, 164 N. Y., and page 48, 58 N. E.):

"We are unable to agree with the courts below in the construction given to this provision of the will. In the first place, it will be noted that there is no direct gift of the principal of the trust estate, but, instead, a direction to divide it on the death of the testator's widow. The will provides: 'Upon the decease of my said wife I order and direct that my estate be divided as follows, viz.: Equally between my brothers and sisters and my niece, Flora W. Bulkley, each one to take one equal share thereof: * * * provided, further, that if any of my said brothers and sisters and niece shall depart this life before my said wife, leaving lawful issue him or her surviving, then the share of the one so dying shall be paid over to their issue in equal shares.' Two well-known rules of construction are applicable to this provision: First. Where the only words of gift are found in the direction to divide or pay at a future time, the gift is future, not immediate; contingent, and not vested. In re Baer, 147 N. Y. 348, 354, 41 N. E. 702; Delafield v. Shipman, 103 N. Y. 464, 9 N. E. 184; Delaney v. McCormack, 88 N. Y. 174, 183. Second. Where the gift is of money, and the direction to convert the estate is absolute, the legacy given to a class of persons vests in those who answer the description and are capable of taking at the time of the distribution. Teed v. Morton, 60 N. Y. 506; In re Baer, 147 N. Y. 353; Smith v. Edwards, 88 N. Y. 92. In the latter case Judge Finch said: 'It has been often held that, if futurity is annexed to the substance of the gift, the vesting is suspended; * * * that, where the only gift is in the direction to pay or distribute at a future time, the case is not to be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift.' It is true that to these general rules of construction there are exceptions, and the cases noting them can be grouped under two heads: First. If the postponement of the payment is for the purpose of letting in an intermediate estate, then the interest shall be deemed vested at the death of the testator, and the class of legatees is to be determined as of that date, for futurity is not annexed to the substance of the gift. * * * The second exception is where there are words importing a gift in addition to the direction to executors or trustees to pay over, divide, or distribute. In such a case the general rule of construction does not govern, because the language employed, outside of the direction to divide or distribute, imports a gift, and, therefore, the situation is precisely as if the will contained words of gift."

The opinion concludes with this positive reiteration of the doctrine, which is decisive of this branch of the case at bar (page 80, 164 N. Y., and page 50, 58 N. E.):

"Without pursuing this subject further, I state the conclusion at which we have arrived: That, aside from the direction to the executors or trustees to divide and distribute the estate, there are no words importing a gift, and hence it becomes our duty to give force and effect to the rule that, where the only gift is found in a direction to divide or pay at a future time, the gift is future, not immediate; contingent, and not vested."

It is proper to note that the rule referred to by Chief Judge Parker to the effect that, where the gift is of money, and the direction to convert the estate is absolute, the legacy given to a class vests only in those who answer the description at the time of distribution, can, of necessity, only relate to a case where the distribution is postponed until the happening of some future event, or where it is to be among a class dependent upon survivorship or other contingency. It has no application to a direction to divide immediately, and no application to a direct and absolute gift in positive terms, notwithstanding it is coupled with a power of sale conferred only in order to form a homogeneous fund, and to promote convenience and secure economy in the physical severance of the interests created by the will.

The other points presented, and which are subsidiary to those discussed, have been considered, and nothing is found affecting the re-

sult. The conclusion reached is that this will is to be regarded precisely as though the testator had left personal property only, and had bequeathed the same directly to his wife and children in equal shares.

The decree and order should be affirmed, with costs. All concur.