ISAAC B. CANFIELD, Plaintiff, *v.* ANDREW X. FALLON and THAD-DEUS D. KENNESON, as Executors, etc., of JULIA F. MANSFIELD, Deceased, CATHARINE E. GULBRANDSEN and Others, Defendants.

*Will — direction to divide the income of the testator's estate between his two daughters, the portion of each to be divided among her children after her death — the children of such daughters take vested interests.*

A testator, after giving to his widow during her widowhood the use of his real and personal estate, provided : " After the death of my wife Catharine, I order that my property be equally divided between my children Catharine Elizabeth and Julia Frances, that is to say, I give to my executors in trust, for and during the natural life of my daughter Catharine Elizabeth, for her sole use and benefit, the income and profits of the one equal half of all my real and personal estate. And after her death I order the said half of my estate to be equally divided among her heirs as they shall attain the age of twenty-one years each, if any shall be minors at the time of her death. I also give to my executors in trust, for and during the natural life of my daughter Julia Frances, for her sole benefit and use, the income and profits of the other one equal half of all my real and personal estate, and after her death I order the said half of my estate to be equally divided among her heirs as they shall attain the age of twenty-one years each, if any shall be minors at the time of her death. And I further direct my executors to pay the said income and profits to my daughters Catharine Elizabeth and Julia Frances, in half-yearly payments, the said Catharine Elizabeth and Julia Frances giving their receipts for the same. If either of my children Catharine Elizabeth or Julia Frances should die before their heirs shall have attained the age of twenty-one years, I order said heirs to receive their proportion of the income to which their mother was entitled, while living, in half-yearly payments."

*Held,* that the shares given to the grandchildren of the testator vested at the latter's death, and that upon the death, intestate, unmarried and during minority of the only child of the testator's daughter Julia Frances, the latter, who was her sole surviving parent, succeeded to the share of such child, which share passed under the will of the said Julia Frances upon her subsequent death.

MOTION by the defendants, Catharine E. Gulbrandsen and others, for a new trial made upon exceptions taken to the decision of the court, made at the Orange Special Term, determining a question of fact and directing the entry of an interlocutory judgment.

*Daniel D. Sherman,* for the plaintiff.

*Thaddeus D. Kenneson,* for the defendant executors and Fanny Faye Hunt.

*J. Du Pratt White,* for the defendants Catharine E. Gulbrandsen and others.

*Guy C. Frisbie,* for the infant defendants.

Exceptions overruled and motion for new trial denied, with costs, on opinion of HIRSCHBERG, J., at Special Term.

All concurred.

The following is the opinion of HIRSCHBERG, J., at Special Term:

HIRSCHBERG, J.:

This action is brought for the construction and determination of the rights of Julia Frances Mansfield, under the will of Isaac I. Blauvelt, and for the partition of certain real and personal property among the parties according to their interests as so ascertained.

Isaac I. Blauvelt died December 12, 1861, leaving a last will and testament, relating to both real and personal property, as follows:

" The last will and testament of Isaac I. Blauvelt of Orangetown in the county of Rockland and State of New York, made, published and declared in the manner as follows:

"*First.* I order all my debts and funeral expenses to be paid as soon as convenient.

"*Secondly.* I give unto my wife Catharine, during her widowhood, the use of all my real and personal estate, authorizing her to sell and dispose of any of my real estate as to her shall seem just; giving and executing all deeds and writings necessary to secure the purchasers in all rights of ownership in the same manner as I could have done if living. After the death of my wife Catharine, I order that my property be equally divided between my children Catharine Elizabeth and Julia Frances, that is to say, I give to my executors in trust, for and during the natural life of my daughter

Catharine Elizabeth, for her sole use and benefit, the income and profits of the one equal half of all my real and personal estate. And after her death I order the said half of my estate to be equally divided among her heirs as they shall attain the age of twenty-one years each, if any shall be minors at the time of her death. I also give to my executors in trust, for and during the natural life of my daughter Julia Frances, for her sole benefit and use, the income and profits of the other one equal half of all my real and personal estate, and after her death I order the said half of my estate to be equally divided among her heirs as they shall attain the age of twenty-one years each, if any shall be minors at the time of her death. And I further direct my executors to pay the said income and profits to my daughters Catharine Elizabeth and Julia Frances, in half-yearly payments, the said Catharine, Elizabeth and Julia Frances giving their receipts for the same. If either of my children Catharine Elizabeth or Julia Frances should die before their heirs shall have attained the age of twenty-one years, I order said heirs to receive their proportion of the income to which their mother was entitled, while living, in half-yearly payments.

"*Lastly.* I constitute my wife Catharine and my daughters Catharine Elizabeth and Julia Frances, executrices of this my last will and testament.

"In Witness whereof I have hereunto set my hand and seal, this twenty-ninth day of March, one thousand eight hundred and forty-nine."

At the time of his death the deceased Isaac I. Blauvelt left him surviving his widow Catharine, and the two daughters named in the will. The daughter Catharine Elizabeth was then married and had six children. The daughter Julia Frances was then a widow and had one child, a girl about fourteen years of age. The testator's widow died July 4, 1896, never having remarried. Catharine Elizabeth died intestate January 31, 1897, leaving her surviving six children, one having died after the testator, intestate and unmarried, and one having been subsequently born. The six surviving children are the plaintiff and the defendants Catharine E. Gulbrandsen, Frances A. Canfield, Ellen F. Canfield, Julia E. Canfield and Lucy F. Warner.

The child of the daughter Julia Frances died about three years

after the testator, intestate and unmarried. Julia Frances thereafter remarried, but no child was born of that marriage. She died October 1, 1897, after the commencement of this action, her second husband having died before her. She left a will, naming the defendants Andrew Xavier Fallon and Thaddeus D. Kenneson, executors, and giving all her property and estate, after the payment of certain legacies, one-half to her stepdaughter, the defendant Fanny Faye Hunt, and the other half to such children of her nephew, the plaintiff, Isaac B. Canfield, as should survive her, to be divided equally among them.

Such surviving children are the infant defendants, Catharine B. Canfield, Arthur F. Canfield, Lloyd H. Canfield, Florence S. Canfield and Isaac M. Canfield.

The only question presented and contested upon the trial was whether, by the terms of the will, the interests of the testator's grandchildren vested at his death, and as a result whether his daughter Julia Frances inherited her daughter's one-half of the estate in remainder on the death of the latter. The converse of the proposition stated has been argued with great amplitude and elaboration, but the question appears to have been settled in this State in favor of the vesting of the interests. In other words, the daughter of Julia Frances took one-half of the estate of the testator in fee immediately upon his decease, subject to the life estate of the testator's widow and to the trust created for the benefit of Julia Frances during life.

The primary canon of interpretation is to follow the intention. The scheme of the will is simple. The testator intended his wife to have the use of all his property during life or widowhood. She took a life estate. (*Matter of Blauvelt*, 131 N. Y. 249.) At her death each of his daughters was to have the use of one-half of the property during life, with remainder to her children. There is no element of uncertainty, such as may arise when the remainder is limited to children surviving the life tenant, but the disposition is for the benefit of the children absolutely, subject to the life estates, and also to possible diminution in amount by the birth of other children. The word "heirs," used by the testator, is clearly used in the sense of children or descendants and not in its broad and general sense. This is evidenced not only by the provision that they

are to receive their shares as they respectively attain majority, but also by the provision that should either of the testator's daughters die before " their heirs " attain the age of twenty-one years, said " heirs " should receive their proportion of the income to which " their mother " was entitled while living. Where the word " heir " is used in a will so as to mean children or descendants, it is the duty of the court to give it that meaning in construing the will. (*Norris* v. *Beyea*, 13 N. Y. 280; *Bundy* v. *Bundy*, 38 id. 410; *Scott* v. *Guernsey*, 48 id. 106; *Livingston* v. *Greene*, 52 id. 118; *Lytle* v. *Beveridge*, 58 id. 592; *Thurber* v. *Chambers*, 66 id. 42; *Smith* v. *Scholtz*, 68 id. 41; *Surdam* v. *Cornell*, 116 id. 305; *Hard* v. *Ashley*, 117 id. 606; *Heath* v. *Hewitt*, 127 id. 166.)

The statute provides that "Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent, whilst the person to whom or the event upon which they are limited to take effect remains uncertain." (1 R. S. 723, § 13.)

The interests of the grandchildren were vested at the testator's death under the strict terms of this definition. In respect of this question, it is wholly immaterial whether the executors have any title to the principal of the estate as trustees. There is no trust beyond the income conferred upon them by the express provisions of the will, and the vesting of the grandchildren's interests will not be postponed by a trust spelled out by implication. The case of *Townshend* v. *Frommer* (125 N. Y. 446), chiefly relied on by the counsel for the children of Catharine Elizabeth, is not in point. That was the case of a trust deed made for the benefit of the grantor during life, and upon the further trust at her death to convey the lands to the grantor's children living at her decease, and the surviving children of such of them as may then be dead. The court held that no present estate passed to the children. It said (p. 460): "It is the uncertainty here as to the precise persons, in whom would exist the right to enforce the execution of the power in trust, if, upon Mrs. Curtis' death, any estate remained to be conveyed; that introduces the element of contingency." In the more recent case of *Campbell* v. *Stokes* (142 N. Y. 23), where the executors were directed to divide the residuary

estate into as many shares as the testator had surviving children, one share to be held in trust for each child for life, and the principal to be transferred on the death of the beneficiary to his or her surviving issue, it was held that the issue of any child of the testator living at his death took a vested remainder in the share held in trust for the parent. The court distinguished *Townshend* v. *Frommer* (p. 30) as follows: " The case of *Townshend* v. *Frommer* (125 N. Y. 446) does not and was not intended to overturn the general doctrine, that remaindermen are not bound by a conveyance of the estate to which their interest attaches unless they are parties thereto in fact or in law. The case was peculiar and anomalous and involved complicated questions under the law of trusts and powers. It arose under a trust deed, whereby the grantor retained the beneficial use of the property for life, and which contained directions for the disposition of the fee after her death, to persons who were not ascertainable until the happening of that event. The intention of the grantor, deduced by the court from the transaction, was to postpone the accruing of any future interests until that event happened. The present case affords no ground for such a presumption." It is to be noted that the learned judge who wrote for the court in *Townshend* v. *Frommer* concurred in the decision of *Campbell* v. *Stokes.*

In determining the intention of the testator, the leading inquiry, of course, is whether the gift itself is immediate, the time of payment or enjoyment only being postponed, or whether the gift itself is future and contingent, depending upon the beneficiary arriving at age, surviving some other person, or the like. In the latter case futurity is said to be annexed to the substance of the gift, and as a general proposition this is the case where the only gift is found in a direction to divide at a future date. But the general rule that when a testamentary gift is found only in the direction to divide at a future time, the gift is future and contingent, is not controlling, but is subordinate to the primary canon that the construction shall follow the intent to be collected from the whole will. (*Goebel* v. *Wolf,* 113 N. Y. 405.) It was accordingly held in that case that where the testator gave his residuary estate to trustees, in trust, to pay one-half the income to his widow, for the support of herself and his minor children, and the other half, after the payment of mortgages, for the benefit of his children, with a direction, upon the youngest

child attaining the age of twenty-one years, to divide all the estate equally among his children, each of the children living at the time of the testator's death took a vested remainder in his proportionate share dependent upon the termination of the trust; and that the share of one who died after the testator, but before the period of distribution, descended to his heirs at law or next of kin, according to the nature of the property.

To the like effect is the case *In the Matter of Brown* (154 N. Y. 313). There all the estate was given to the executors in trust to pay an annuity to the widow during life or widowhood, and a specific share of the residue of the income to each child during life, with remainders over to the children's children, such remainders being created only by a direction to pay over and divide upon the termination of each respective precedent trust; and the court held that, while the trust estate vested in the trustees, the remainders were never given to them; that they were not the owners of the absolute fee, but simply of so much of the estate as was put in trust and as was necessary to provide the income; and that the shares of the grandchildren vested at the testator's death. The rule of construction in *Goebel* v. *Wolf* (*supra*) was reiterated, and citing Schouler on Wills (§§ 529, 530) and 2 Jarman on Wills (6th ed.) 168, it was declared that even assuming " that at the time of the execution of the will the gift to the grandchildren was to a class, it does not necessarily follow that their estates did not vest as tenants in common upon the decease of the testator, for, in the absence of a different intention disclosed in the will, the class will be ascertained and determined as of the death of the testator." (P. 326.) It is to be observed that in the will then under consideration, the language creating the remainder was that " on her decease the principal shall be paid over to her children." (P. 320.) There was no element of uncertainty, no limitation dependent upon survivorship, but a postponement only of the date of payment. The difference in construction dependent upon the presence or absence of this element is illustrated by *McGillis* v. *McGillis* (154 N. Y. 532) where it was held that in a devise to a married daughter for life, and in case her husband survived her, to him for life, and from and after their death to the lawful issue of the daughter then living, the remainder was contingent and not vested.

"The rule is well settled in this State," said the court in *Hersee* v. *Simpson* (154 N. Y. 500), "that a remainder is not to be considered as contingent in any case where, consistently with the intention of the testator, it may be construed as being vested. Words or phrases denoting time, such as when, then and 'from and after,' in a devise of a remainder, limited upon a particular estate determinable on an event which must necessarily happen, are construed to relate merely to the time of the enjoyment of the estate, and not to the time of its vesting. This is especially so in the construction of devises of real estate. (*Moore* v. *Lyons*, 25 Wend. 119, 144; *Sheridan* v. *House*, 4 Keyes, 569 ; *Livingston* v. *Greene*, 52 N. Y. 118, 123 ; *Ackerman* v. *Gorton*, 67 id. 63, 66 ; *Nelson* v. *Russell*, 135 id. 137.)" Accordingly held that, under a devise of a life estate to the testator's wife, with a provision that "from and after her decease" the property should be disposed of according to the statutes governing the descent of real estate, the heirs of the testator upon his death took a vested remainder in his real property.

In *Nelson* v. *Russell* (*supra*) it was held that "The presumption is that a testator intends that his dispositions shall take effect in enjoyment or interest at the date of his death, and, upon the happening of that event. unless the language of the will by fair construction makes his gifts contingent, they will be regarded as vested. Words of survivorship and gifts over on the death of the primary beneficiary are to be construed, unless a contrary intention appears, as relating to the death of the testator."

The general principle has been applied by the Court of Appeals in cases similar or analogous, in addition to those above cited, in *Tucker* v. *Bishop* (16 N. Y. 402); *Gilman* v. *Reddington* (24 id. 9); *Everitt* v. *Everitt* (29 id. 39) ; *Warner* v. *Durant* (76 id. 133); *Smith* v. *Edwards* (88 id. 92); *Matter of Brown* (93 id. 295); *Byrnes* v. *Stilwell* (103 id. 453); *United States Trust Co.* v. *Roche* (116 id. 120); *Van Axte* v. *Fisher* (117 id. 401) ; *Matter of Tienken* (131 id. 391) ; *Matter of Young* (145 id. 535), and *Matter of Seaman* (147 id. 69). (See, also, *Doe ex dem. Barnes* v. *Provoost*, 4 Johns. 61; *Linton* v. *Laycock*, 33 Ohio St. 128; *Doe* v. *Considine*, 6 Wall. 458; *Cropley* v. *Cooper*, 19 id. 167, and *McArthur* v. *Scott*, 113 U. S. 340.)

I have carefully examined the numerous authorities cited in behalf

of the children of the testator's daughter Catharine Elizabeth. They are instances where the intention, deduced from the language of the instrument itself, was not to create any present right to a future estate, but a future interest only, in some cases to be conveyed by a power in trust conferred by deed, the reversion meanwhile remaining in the grantor or his heirs, subject to the execution of the power; or they are instances where final distribution is to be made among a class whose members can only be determined on the happening of an uncertain contingency, and who, as a class, are strictly confined to those who may come within the appropriate category at the time of the division.

I find that one-half of the testator's estate vested in remainder in his granddaughter, the child of his daughter Julia Frances, immediately upon his death; that upon the death of this child, her mother succeeded to such one-half, and that the same is to be distributed in accordance with the terms and provisions of her mother's will.

Ordered accordingly.